UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE ROSARIO,

    Plaintiff,

v.      Case No.  8:23-cv-1671-SPF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

# ORDER

Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    **I.**    **Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 429–44, 451–52). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 200–05, 229–54). Plaintiff then requested an administrative hearing (Tr. 255–56). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 42–105). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 17–33). Subsequently, Plaintiff requested review from the Appeals Council, which the

Appeals Council denied (Tr. 1–6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Plaintiff, who was born in 1976, claimed disability beginning August 5, 2017 (Tr. 429, 451). Plaintiff obtained a GED (Tr. 505). Plaintiff's past relevant work experience included work as an industrial truck operator, tractor trailer truck driver, material handler, and construction worker (Tr. 31). Plaintiff alleged disability due to vertebrae damage, broken right leg, neck pain, wrist problems, injured shoulder, and concussion (Tr. 504).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2021 and had not engaged in substantial gainful activity since August 5, 2017, the alleged onset date (Tr. 19). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: disorders of the spine; right knee fracture requiring open reduction internal fixation surgery; obesity; a depressive disorder; a personality disorder; trauma and stressor-related disorders; alcohol use disorder; and marijuana use disorder (Tr. 19). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with the following limitations:

> The claimant can lift/carry 20 pounds occasionally and 10 pounds frequently; sit for a total of six hours in an eight-hour workday; stand for a total of six hours in an eight-hour workday; and walk for a total of four hours in an eight-hour workday. The claimant can frequently reach

overhead and push/pull with the bilateral upper extremities; and frequently operate foot controls with the right lower extremity. He can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. The claimant can frequently operative a motor vehicle. However, he should avoid even moderate exposure to humidity/wetness, pulmonary irritants, temperature extremes and vibrations. The claimant is able to perform simple to moderate complex, but not detailed tasks. He can occasionally interact with the general public, coworkers, and supervisors.

(Tr. 23). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 24).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 31). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a merchandise marker, mail clerk, and routing clerk (Tr. 32). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 33).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or

which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV.   Analysis**

Plaintiff argues that the ALJ erred by failing to consider Plaintiff's diagnosis of "unspecified psychosis not due to a substance or known physiological condition; DSM5:

5

unspecified schizophrenia spectrum and other psychotic disorder; ICD 9: 298.9" (hereafter "unspecified psychosis") (Tr. 1122).  The Commissioner responds that the ALJ properly considered the record as a whole—including Plaintiff's diagnosis of unspecified psychosis—in determining Plaintiff's RFC, which is supported by substantial evidence.  For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

As an initial matter, nothing requires the ALJ to identify, at step two, all of a claimant's severe impairments.  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  Instead, at steps three and four, the ALJ is required to consider the claimant's medical condition as a whole.  *Id.*  When an ALJ evaluates a claimant's mental impairments at steps two and three, he or she employs the PRT to assess the claimant's functional limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *Moore v. Barnhart*, 405 F.3d 1208, 1213–14 (11th Cir. 2005).  The ALJ incorporates the results of the PRT into the findings and conclusions at steps four and five of the sequential evaluation process.  *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013).[1]  But the PRT is separate from the ALJ's evaluation of a claimant's RFC, which is an assessment of a claimant's maximum ability to do work despite her impairments.  The mental RFC is a more detailed assessment of the claimant's ability to function.  *Winschel v. Comm'r of Soc.*

---

[1] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

*Sec*, 631 F.3d 1176, 1180 (11th Cir. 2011).  In other words, an ALJ must be more thorough in evaluating a claimant's RFC at step four than in assessing the severity of mental impairments at steps two and three.  *Id.*

The ALJ found that Plaintiff had the following severe impairments: disorders of the spine; right knee fracture requiring open reduction internal fixation surgery; obesity; a depressive disorder; a personality disorder; trauma and stressor-related disorders; alcohol use disorder; and marijuana use disorder (Tr. 19).  She then proceeded through the PRT and found that Plaintiff had mild limitations in the areas of understanding, remembering, or applying information; and adapting or managing oneself and moderate limitations in the areas of concentrating, persisting, or maintaining pace; and interacting with others (Tr. 21–22).  The ALJ then proceeded through the sequential evaluation process and assessed Plaintiff's RFC.  The ALJ clarified that "[t]he following residual functional capacity assessment reflects the degree of the limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 23).

Plaintiff identifies treatment records from an involuntary admission to Gracepoint in June 2022 to show that he was diagnosed with unspecified psychosis.  In the course of the ALJ's RFC analysis, she thoroughly discussed Plaintiff's mental health treatment records, including these records from Gracepoint (Tr. 28–29).  In this discussion, the ALJ specifically noted that Plaintiff was diagnosed with unspecified psychosis during this visit (Tr. 29).  Thus, there is no question that the ALJ considered these records and this diagnosis in formulating Plaintiff's RFC.  *Cf. Ingram v. Astrue*, No. 8:07-cv-1591-JDW-TBM, 2008 WL 2943287, at *5 (M.D. Fla. July 30, 2008) ("In light of the ALJ's repeated

7

reference to these records, I am obliged to find that the objective evidence set forth therein was also considered by the ALJ even if not specifically mentioned.").

Plaintiff concedes that the ALJ considered these records, but argues that the ALJ did not properly consider the effects of this condition because she mischaracterized the diagnosis. In particular, Plaintiff argues that the ALJ improperly described the diagnosis as "unspecified psychosis," when the diagnosis in the report actually stated, "unspecified psychosis, not due to a substance or known physiological condition; DSM5: unspecified schizophrenia spectrum and other psychotic disorder" (Doc. 23 at 4; Tr. 1122). This argument is without merit. As evidenced by the excerpt below, the record clearly states that the principal diagnosis is "unspecified psychosis." Then, under that diagnosis, the ICD-10 billing code for unspecified psychosis is provided. Below that, the DSM-5 listing for this diagnosis is described as "Unspecified schizophrenia spectrum and other psychotic disorder" (Tr. 1122).[2] A plain reading of the record reveals that the ALJ did not mischaracterize the diagnosis.

**Principal Diagnosis**
*Unspecified psychosis*
**ICD10:** F29 - Unspecified psychosis not due to a substance or known physiological condition
**DSM5:** Unspecified schizophrenia spectrum and other psychotic disorder **ICD9:** 298.9

Even assuming the ALJ mischaracterized Plaintiff's diagnosis, however, the ALJ nonetheless did not err. The ALJ thoroughly discussed Plaintiff's mental health treatment, and specifically discussed Plaintiff's 2022 involuntary admission to Gracepoint (Tr. 28–29). The ALJ also stated that she carefully considered the "entire record" in

---

[2] DSM-5 refers to Diagnostic and Statistical Manual of Mental Disorders (5th ed., 2013).

assessing Plaintiff's RFC and "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" (Tr. 23). Thus, Plaintiff has not shown that the ALJ failed to consider this diagnosis. *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 n.3 (11th Cir. 2010) (ALJ's statements that he considered "the entire record" and "all symptoms" indicate he considered all of claimant's impairments); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (a simple expression of the ALJ's consideration of the combination of impairments constitutes a sufficient statement of such findings). Indeed, the ALJ does not have to discuss every single piece of medical evidence in the record. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808–09 (11th Cir. 2013) ("Despite [the claimant's] assertions to the contrary, the ALJ stated that he considered the record in its entirety, and he was not required to discuss every piece of evidence in denying her application for disability benefits.") (citations omitted).

Plaintiff next points to his history of being involuntarily admitted to mental health facilities, being arrested, and acting inappropriately as further support for his assertion that the ALJ did not adequately evaluate his unspecified psychosis. Again, the ALJ's decision shows that she was aware of Plaintiff's mental health treatment and criminal history (Tr. 26–29). For example, the ALJ's decision noted that Plaintiff's history was positive for involuntary mental health hospitalizations in 2016, 2017, 2021, and 2022 (Tr. 26–28). The ALJ also noted that Plaintiff was placed on suicide watch while incarcerated and

9

involuntarily admitted to Gracepoint while incarcerated (Tr. 28).  To the extent Plaintiff attempts to identify this as evidence undermining the ALJ's RFC, this request is, at essence, a request that the Court substitute itself for the ALJ and reweigh the evidence, which is beyond the scope of this Court's review.  *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our own judgment for that [of the Commissioner]' . . . .") (alterations in original).[3]  Moreover, it is the functional limitations imposed by a condition, rather than the mere diagnosis of the condition, that determines disability.  *See Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  Plaintiff has not demonstrated any functional limitations that the ALJ should have considered.

**V.   Conclusion**

Accordingly, after consideration, it is hereby

ORDERED:

    1.  The decision of the Commissioner is affirmed.

    2.  The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

---

[3] To that end, Plaintiff asserts that the VE testified that occasional instances of making verbal threats and becoming combative would be work-preclusive.  While Plaintiff accurately characterizes the VE's testimony, for the reasons explained above, Plaintiff has not established that the ALJ should have included these limitations in his RFC.

**ORDERED** in Tampa, Florida, on this 13th day of September, 2024.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE